| | |
|---|---|
| MARLENE KANEHL and PATRICK BILLS, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) Plaintiff, ) v. ) ) ENCORE RECEIVABLE MANAGEMENT INC., ) ) Defendant. ) | Case No.: 18-cv-1784 **CLASS ACTION COMPLAINT** **Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Marlene Kanehl is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Patrick Bills is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs a debt allegedly incurred for personal, family or household purposes.

6.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

7.     Defendant Encore Receivable Management, Inc. ("Encore") is a foreign business corporation with its principal place of business located at 201 East Fourth Street, Cincinnati, Ohio 45202.

8.     Encore does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin 537030.

9.     Encore is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.     Encore is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11.     Encore is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Related to Plaintiff Kanehl*

12.     On or about October 30, 2017, Synchrony Bank ("Synchrony") mailed Plaintiff Kanehl a credit card account statement to Kanehl regarding an alleged debt Kanehl owed to Synchrony for purchases and other charges incurred as a result of the use of her "Synchrony Car Care" credit card.  A copy of this account statement is attached to this Complaint as Exhibit A.

13.     Exhibit A contains the following:

2



14.     Exhibit A states that, as of October 30, 2017, Kanehl's alleged Synchrony credit card account with an account number ending in 5703 had a "New Balance" of $565.00, with an "Amount Past Due" of $56.00, a "Total Minimum Payment Due" of $102.00," and a "Payment Due Date" of November 22, 2018.

15.     Exhibit A further states that payment is "DUE BY 5 P.M. EASTERN ON THE DUE DATE."

16.     On or about November 2, 2017, Synchrony mailed a debt collection letter to Kanehl regarding the same alleged "Synchrony Care Car" credit card account ending in 4996. A copy of this letter is attached to this Complaint as Exhibit B.

17.     Exhibit B contains the following:

November 17, 2017 is the LAST DAY FOR PAYMENT.
$56.00 is the AMOUNT NOW DUE.

You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the contract as though you were not late. Payment should be sent to us at the address set forth below. If you do not pay by this date, we may exercise our rights under the law.

18.     Exhibit B states that "$56.00 is the AMOUNT NOW DUE."

19.     Exhibit B further states that Kanehl could return her account to a current status by paying the "AMOUNT NOW DUE" by November 17, 2017.

20.     Exhibit B further states that, if Kanehl did not return her account to a current status by November 17, 2017, Synchrony "may exercise [its] rights under the law."

3

21.     The "AMOUNT NOW DUE" stated in Exhibit B is the "Amount Past Due" stated in Exhibit A.

22.     On or about November 29, 2017, Synchrony mailed Plaintiff Kanehl a credit card account statement to Plaintiff regarding the same alleged debt.  A copy of this account statement is attached to this Complaint as Exhibit C.

23.     Exhibit C contains the following:



24.     Exhibit C states that, as of November 29, 2017, Plaintiff Kanehl's alleged Blain's credit card account with an account number ending in 4996 had a "New Balance" of $716.99, with an "Amount Past Due" of $102.00, a "Total Minimum Payment Due" of $164.00," and a "Payment Due Date" of November 29, 2017.

25.     Exhibit C further states that payment is "DUE BY 5 P.M. EASTERN ON THE DUE DATE."

26.     On or about December 1, 2017, Encore mailed Plaintiff Kanehl a debt collection letter regarding Plaintiff's alleged "Synchrony Car Care" account ending in 4996.  A copy of this letter is attached to this Complaint as Exhibit D.

27.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

4

28.     Upon information and belief, Exhibit D is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

29.     Upon information and belief, Exhibit D was the first letter Defendant sent to Plaintiff regarding this alleged debt.

30.     Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

31.     Exhibit D also contains the following:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | SYNCHRONY CAR CARE |
| For Account Ending in: | XXXXXXXXXXXX4996 |
| Encore Account #: | ▮▮▮▮▮7681 |
| Total Account Balance: | $716.99 |
| Amount Now Due: | $164.00 |

32.     Exhibit D also contains the following:

Note: As of the date of this letter, your Total Account Balance is $716.99 of which $164.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement. For further information, call or write us.

33.     Exhibit D also contains a payment remittance slip, which contains the following:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | SYNCHRONY CAR CARE |
| For Account Ending in: | XXXXXXXXXXXX4996 |
| Encore Account #: | ▮▮▮▮▮7681 |
| Total Account Balance: | $716.99 |
| Amount Now Due: | $164.00 |

5

34.     Exhibit D states that, as of December 1, 2017, the alleged debt had a "Total Account Balance" of $716.99 and an "Amount Now Due" of $164.00.

35.     Exhibit D is false, deceptive, misleading, and confusing to the unsophisticated consumer.

36.     The unsophisticated consumer has previously received letters from the creditor that indicate the "amount now due" is the "amount past due."

37.     Exhibit D states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in Exhibit C.

38.     There is a difference between the "Amount Past Due" and the "Total Minimum Payment Due." The "Total Minimum Payment Due" is the sum of the "amount past due" and the minimum payment, which is not itself due until "5 P.M. EASTERN ON THE DUE DATE."

39.     It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

40.     Thus, under *Barnes*, Encore cannot attempt to collect portions of the balance that are "owed" to Synchrony but are not yet "due." *Barnes*, 493 F.3d at 840 ("only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ."); *see also* 15 U.S.C. § 1692e(2)(a) (prohibiting misrepresentations about the legal status of a debt).

41.     Moreover, there is a difference between the minimum amount due and the past due amount, and Encore's use of the phrase "AMOUNT NOW DUE" is confusing and misleading to the unsophisticated consumer because it is inconsistent with Synchrony's use of

6

the phrase "AMOUNT NOW DUE." *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n.3 (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

42.     Upon information and belief, the purpose of Encore's conduct – attempting to collect the "Total Minimum Payment Due" rather than the "Amount Past Due" – is to increase its profits under false pretenses.

43.     Upon information and belief, Encore, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.")

44.     Upon information and belief, if a consumer pays Encore an amount greater than the "Amount Past Due," Encore is still entitled to retain a portion of that recovery.

45.     Additionally, <u>Exhibit D</u> contains the following:

> Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below.

<u>Exhibit D</u>.

46.     The instruction in <u>Exhibit D</u> that the consumer should contact the debt collector by telephone "if payment has already been made" is false, deceptive, and misleading to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing:

> 15 U.S.C. § 1692g(a)(4) states:
>
> (a) Notice of debt; contents
>> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the

7

consumer has paid the debt, send the consumer a written notice containing—

>       …

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

47.     To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute.  15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

48.     Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

8

49.     Having already paid the debt is one of the most common reasons a consumer would dispute a debt under the FDCPA, and is one of the primary reasons Congress adopted the debt validation procedure specified in 15 U.S.C. 1692g.  *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n. 6 ("Congress enacted the FDCPA to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.") (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

50.     Exhibit D confusingly directs the debtor to notify the debt collector about these disputes without informing the consumer that the dispute must be communicated in writing in order to trigger verification.  *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19,

2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

51.     Encore's instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled.  *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

52.     The overshadowing effect is compounded because Encore expressly calls the consumer's attention to it by prefacing it with the word "Note."  *See e.g., Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g.").

53.     The overshadowing effect is also compounded by the general confusion caused by the confusion wrought by Encore's use of the phrase "Amount Now Due."  *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the receipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

54.     Exhibit D contradicts, overshadows and confuses the 15 U.S.C. § 1692g notice.

55.     Plaintiff Kanehl was confused by Exhibit D.

56.     The unsophisticated consumer would be confused by Exhibit D.

*Facts Related to Plaintiff Bills*

57.     On or about May 15, 2018, Synchrony Bank ("Synchrony") mailed Plaintiff Bills a credit card account statement to Plaintiff regarding an alleged debt Plaintiff owed to Synchrony for purchases and other charges incurred as a result of the use of his "Blain's Farm & Fleet" store-branded credit card. A copy of this account statement is attached to this Complaint as Exhibit E.

58.     Exhibit E contains the following:

BLAIN'S FARM & FLEET/SYNCB

PATRICK BILLS
Account Number : ████████8639
Statement Closing Date: 05/15/2018

**synchrony** FINANCIAL

| Summary of Account Activity | | Payment Information | |
|---|---|---|---|
| Previous Balance | $1,394.39 | New Balance | $1,469.81 |
| + New Purchases | $0.00 | Minimum Payment This Period | $91.00 |
| - Payments | $0.00 | Amount Past Due | $115.00 |
| +/- Credits, Fees & Adjustments (net) | $38.00 | Total Minimum Payment Due | $206.00 |
| +/- Interest Charge (net) | $37.42 | Payment Due Date | 06/07/2018 |

59.     Exhibit E states that, as of May 15, 2018, Plaintiff Bills' alleged Synchrony credit card account with an account number ending in 8639 had a "New Balance" of $1,469.81.00, with an "Amount Past Due" of $115.00, a "Total Minimum Payment Due" of $206.00," and a "Payment Due Date" of June 7, 2018.

60.     Exhibit E further states that payment is "DUE BY 5 P.M. EASTERN ON THE DUE DATE."

61.     On or about May 18, 2018, Synchrony mailed a debt collection letter to Plaintiff Bills regarding the same alleged "Blain's Farm & Fleet" store-branded credit card account ending in 8639. A copy of this letter is attached to this Complaint as Exhibit F.

62.     Exhibit F contains the following:

11

June 2, 2018 is the LAST DAY FOR PAYMENT.
$115.00 is the AMOUNT NOW DUE.

You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the contract as though you were not late. Payment should be sent to us at the address set forth below. If you do not pay by this date, we may exercise our rights under the law.

63.    Exhibit F states that "$115.00 is the AMOUNT NOW DUE."

64.    Exhibit F further states that Plaintiff could return his account to a current status by paying the "AMOUNT NOW DUE" by June 2, 2018.

65.    Exhibit F further states that, if Plaintiff did not return his account to a current status by June 2, 2018, Synchrony "may exercise [its] rights under the law."

66.    The "AMOUNT NOW DUE" stated in Exhibit F is the "Amount Past Due" stated in Exhibit E.

67.    On or about June 14, 2018, Synchrony mailed Plaintiff Bills another credit card account statement to Plaintiff regarding the same alleged debt.  A copy of this account statement is attached to this Complaint as Exhibit G.

68.    Exhibit G contains the following:

BLAIN'S FARM & FLEET/SYNCB

**synchrony** FINANCIAL

PATRICK BILLS
Account Number : ████████8639
Statement Closing Date: 06/14/2018

| Summary of Account Activity | | Payment Information | |
|---|---|---|---|
| Previous Balance | $1,469.81 | New Balance | $1,544.73 |
| +  New Purchases | $0.00 | Minimum Payment This Period | $91.00 |
| -  Payments | $0.00 | Amount Past Due | $206.00 |
| +/- Credits, Fees & Adjustments (net) | $38.00 | Total Minimum Payment Due | $297.00 |
| +/- Interest Charge (net) | $36.92 | Payment Due Date | 07/07/2018 |

69.    Exhibit G states that, as of June 14, 2018, Plaintiff Bills' alleged Blain's credit card account with an account number ending in 8639 had a "New Balance" of $1,544.73, with an "Amount Past Due" of $206.00, a "Total Minimum Payment Due" of $297.00," and a "Payment Due Date" of July 7, 2017.

12

70.     Exhibit G further states that payment is "DUE BY 5 P.M. EASTERN ON THE DUE DATE."

71.     On or about June 18, 2018, Encore mailed Plaintiff Bills a debt collection letter regarding Plaintiff's alleged "Blain's Farm & Fleet" store-branded credit card account ending in 8639. A copy of this letter is attached to this Complaint as Exhibit H.

72.     Upon information and belief, Exhibit H is a form letter, generated by computer, and with the information specific to Plaintiff Bills inserted by computer.

73.     Upon information and belief, Exhibit H is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

74.     Upon information and belief, Exhibit H was the first letter Defendant sent to Plaintiff Bills regarding this alleged debt.

75.     Exhibit H contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

76.     Exhibit H also contains the following:

| | |
|---|---|
| Creditor: | **Synchrony Bank** |
| Re: | BLAIN'S FARM & FLEET |
| For Account Ending in: | XXXXXXXXXXXX8639 |
| Encore Account #: | ███████████9484 |
| Total Account Balance: | $1,544.73 |
| Amount Now Due: | $297.00 |

77.     Exhibit H also contains the following:

13

Note: As of the date of this letter, your Total Account Balance is $1,544.73 of which $297.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement. For further information, call or write us.

78. <u>Exhibit H</u> also contains a payment remittance slip, which contains the following:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | BLAIN'S FARM & FLEET |
| For Account Ending in: | XXXXXXXXXXXX8639 |
| Encore Account #: | ▮▮▮▮▮9484 |
| Total Account Balance: | $1,544.73 |
| Amount Now Due: | $297.00 |

79. <u>Exhibit H</u> states that, as of June 18, 2018, the alleged debt had a "Total Account Balance" of $1,554.73 and an "Amount Now Due" of $297.00.

80. <u>Exhibit H</u> is false, deceptive, misleading, and confusing to the unsophisticated consumer.

81. The unsophisticated consumer has previously received letters from the creditor that indicate the "amount now due" is the "amount past due."

82. <u>Exhibit H</u> states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in <u>Exhibit C</u>.

83. There is a difference between the "Amount Past Due" and the "Total Minimum Payment Due." The "Total Minimum Payment Due" is the sum of the "amount past due" and the minimum payment, which is not itself due until "5 P.M. EASTERN ON THE DUE DATE."

84. Additionally, <u>Exhibit H</u> contains the following:

Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below.

<u>Exhibit H</u>.

85. The instruction in <u>Exhibit H</u> that the consumer should contact the debt collector by telephone "if payment has already been made" is false, deceptive, and misleading to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation

14

notice and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing.

86.     Plaintiff Bills was confused by <u>Exhibit H</u>.

87.     The unsophisticated consumer would be confused by <u>Exhibit H</u>.

### *The FDCPA*

88.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); *quoting Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing

"*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

89.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

90.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

91.     15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

92.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

93.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

94.     15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

95.     15 U.S.C. § 1692g states:

> a) Notice of debt; contents
>      Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;

96.     The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

17

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

97.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

98.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

99.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

18

100. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

101. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

102. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

103. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

104. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

105. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

19

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

106.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

107.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

108.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

109.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

110.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

111.    Defendant misrepresented the "Amount Now Due" on Plaintiff's Synchrony account.  *Compare* Exhibits A-C & E-G  *with* Exhibits D & H.

112.    Exhibits B & F, mailed shortly after Exhibit A & E, respectively, state that the "Amount Now Due" corresponds to the "Amount Past Due" stated in Exhibits A & E.

113.    Exhibits D & H, mailed shortly after Exhibits C & G, respectively, state that the "Amount Now Due" corresponds to the "Total Minimum Payment Due" stated in Exhibits C & G.

20

114.    The unsophisticated consumer would be misled to believe that their account had a past due amount in the amount listed as the "Amount Now Due" by Exhibits D and/or H as of the date of those letters.  In fact, as of the date of Exhibits D & H, Plaintiffs could have brought their accounts current by paying the "Amount Past Due," and paying the difference between that amount and the "Minimum Payment Due" by the payment due date listed on their most recent Synchrony billing statements, Exhibits C & G.

115.    At a minimum, the consumer would be confused as to whether payment of $102.00 or $164.00 would bring her account current.  *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

116.    Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

117.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

118.    Exhibit D & H direct consumers to contact Encore by phone "if payment has already been made."

119.    Exhibit D & H is misleading to the unsophisticated consumer because a consumer who wishes to trigger her verification rights must communicate her dispute in writing.

120.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

**COUNT III – WCA**

121.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

122.    Defendant misrepresented the "Amount Now Due" on Plaintiff's Synchrony account.  *Compare* Exhibits A-C & E-G  *with* Exhibits D & H.

123.    Exhibits B & F, mailed shortly after Exhibit A & E, respectively, state that the "Amount Now Due" corresponds to the "Amount Past Due" stated in Exhibits A & E.

124.    Exhibits D & H, mailed shortly after Exhibits C & G, respectively, state that the "Amount Now Due" corresponds to the "Total Minimum Payment Due" stated in Exhibits C & G.

125.    The unsophisticated consumer would be misled to believe that their account had a past due amount in the amount listed as the "Amount Now Due" by Exhibits D and/or H as of the date of those letters.  In fact, as of the date of Exhibits D & H, Plaintiffs could have brought their accounts current by paying the "Amount Past Due," and paying the difference between that amount and the "Minimum Payment Due" by the payment due date listed on their most recent Synchrony billing statements, Exhibits C & G.

126.    At a minimum, the consumer would be confused as to whether payment of $102.00 or $164.00 would bring her account current.  *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

127.    Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

128.     Plaintiffs brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit D and/or Exhibit H to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family or household purposes (e) between November 9, 2017 and November 9, 2018, inclusive, (f) that was not returned by the postal service.

129.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

130.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

131.     Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

132.     Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

133.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

134.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  November 9, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
          John D. Blythin (SBN 1046105)
          Mark A. Eldridge (SBN 1089944)
          Jesse Fruchter (SBN 1097673)
          Ben J. Slatky (SBN 1106892)
          3620 East Layton Avenue
          Cudahy, WI 53110
          (414) 482-8000
          (414) 482-8001 (fax)
          jblythin@ademilaw.com
          meldridge@ademilaw.com
          jfruchter@ademilaw.com
          bslatky@ademilaw.com

24